683 A.2d 1252

**Maura M. INGALLS, Trustee for the Benefit of United Services Automobile Association, Appellant,**

**v.**

**The HERTZ CORPORATION, Appellee.**

Superior Court of Pennsylvania.

Argued June 25, 1996.

Filed Oct. 30, 1996.

Andrew E. Steckiw, Philadelphia, for appellant.

Lawrence M. Kelly, Philadelphia, for appellee.

Before: DEL SOLE, TAMILIA and BROSKY, JJ.

DEL SOLE, Judge:

Following the submission of a "Case Stated" and the presentation of trial briefs, the trial court issued an order granting judgment in favor of Appellee, Hertz Corporation, and rejecting Appellant's claim that Hertz was required to provide underinsured motorist coverage.[1]  This timely appeal followed.

1.  We note in passing the common law practice of "Case Stated" has been abolished in Pennsylvania, effective January 1, 1997. *See* Pa.

The trial court was presented with the following facts. Appellant, Maura M. Ingalls was operating a vehicle rented from Appellee Hertz, a self-insurer, when it collided with another vehicle being operated negligently by Ray Poplas. Poplas was insured by Allstate Insurance Company who offered Ingalls the full limits of the underlying liability policy. Prior to collecting this third party coverage Ingalls asked Hertz to act as primary underinsured motorist obligor and provide its consent to settle with Poplas and Allstate. Hertz, who did make available underinsured motorist benefits as optional coverage at the time of the rental, denied any obligation citing to the signature page of the rental agreement in which Ingalls declined the optional coverage. Thereafter, Ingalls sought and received underinsured motorist benefits in the amount of $15,000.00 from United Service Automobile Association (USAA) under the terms of a New Jersey policy. USAA gave Ingalls consent to settle her liability claim, but preserved its right to subrogate against Hertz for the underinsured motorist benefits paid to Ingalls.

Appellant acknowledges that Hertz, as a self insured entity, is not legally obligated to provide underinsured motorist benefits. However, it is Appellant's position that once Hertz made available such coverage to its renters it was then obligated to comply with the offering/rejection requirements and provisions found in § 1731 of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A § 1701 *et seq.* Section 1731 mandates specific language and format of presentation for waiver of underinsured motorist coverage, and Appellant argues that Hertz's failure to conform with these specific requirements renders her waiver of underinsured motorist benefits invalid.

■ We, like the trial court, must reject Appellant's argument. Certification of self-insurance is one means to establish financial responsibility under the MVFRL. *See* 75 Pa.C.S.A. § 1786. Section 1787 requires self-insurers to provide required benefits, as well as uninsured motorist coverage howev-

R.C.P., Rule 1038.2, 42 Pa.C.S.A. These matters are now governed by Pa.C.R.P., Rule 1038.1, 42 Pa.C.S.A.

er, it does not require underinsured motorist coverage. 75 Pa.C.S.A. § 1711. In *Hackenberg v. SEPTA,* 526 Pa. 358, 586 A.2d 879 (1991), the Pennsylvania Supreme Court ruled that self-insured entities are not required to provide underinsured motorist benefits. It reasoned that Section 1787 is the only section of the MVFRL which defines the benefits for which a self-insured entity is liable, therefore, it is that section which must be looked at to determine the benefits a self-insurer must pay. The court ruled that since Section 1787 requires uninsured benefits but makes no mention of underinsured benefits, a self-insurer is not required to provide such coverage.

■ Appellant concedes that a self-insured entity is not obliged to provide underinsured motorist coverage but argues that when a self-insurer makes available such coverage it must comply with the provisions of 75 Pa.C.S.A. § 1731, which dictate the specific language and form which must be used to reject such coverage. We find this position untenable. Section 1731 was in a large part created by Act No. 6 of 1990, Feb 7, P.L. 11, No. 6, § 9, effective July 1, 1990. While it requires uninsured and underinsured motorist coverage to be offered before any liability insurance policy is issued in this Commonwealth, it makes the purchase of such coverages optional. The language of § 1731 requires an insured to reject coverage by signing a written form which contains specific language set forth in the statute. The rejection forms are to be on separate sheets of paper in prominent type and location, and are to be witnessed by an insurance agent or broker. 75 Pa.C.S.A. § 1731(c.1).

In *Gutman v. Worldwide Ins. Co.,* 428 Pa.Super. 309, 630 A.2d 1263 (1993), this court considered the applicability of Act 6, particularly the provisions of 1731 to self-insurers. The court rejected a claim that these provisions which make uninsured motorist coverage optional apply to self-insurers. In reaching this conclusion the court stated:

However, Act No. 6 of 1990 does not refer to, nor does it apply to self-insurers. This is clear from language contained therein. The statute requires a mandatory offering

of uninsured and underinsured motorist coverages by stating that "no motor vehicle liability insurance policy shall be delivered or issued for delivery . . . unless uninsured motorist and underinsured motorist coverages are offered." 75 Pa.C.S.A. § 1731(a). If further states that the "[p]urchase of uninsured motorist and underinsured motorist coverages is optional." *Id.* By referring to the deliverance, issuance and purchase of policies and coverage, it is evident that this statutory provision does not apply to self-insurers. A self-insurer would not "purchase" uninsured or underinsured motorist coverage. Likewise, with a self-insurer there is no "policy" to deliver or issue. The statute also required those who wish to reject uninsured motorist coverage to sign a particular form, 75 Pa.C.S.A. § 1731(b), and directs that this form be printed in a certain manner and that the signature on the form be witnessed by an insurance agent or broker. 75 Pa.C.S.A. § 1731(c.1). A self-insurer has no agent or broker and no need to sign a waiver form because there is no policy of insurance.

*Id.* at 312, 630 A.2d at 1265.

Thus, this court in *Gutman* has already found that the statutory provisions of § 1731 do not apply to self-insurers. For these same reasons we find they cannot apply here to invalidate a waiver form signed by Ingalls. Because Hertz was not required to offer any underinsured motorist coverage, its offering and Ingalls' later rejection of such coverage is not covered by any statutory provisions. As the *Gutman* court made clear, the specific form and manner for the offering and rejection of uninsured and underinsured motorist coverage set forth in § 1731 does not apply to self-insurers. Accordingly, we must affirm the trial court's ruling which recognized Ingall's rejection of the underinsured motorist coverage made available by Hertz.

Affirmed.